## Casebeer *versus* Mowry.

1. A verdict was given for the plaintiff in an action for flooding his land, there was a motion for a new trial, pending which another action was brought for the same nuisance. Before the trial a new trial was refused and judgment entered in the first suit. The court charged that this was not conclusive on the defendant, because it did not exist when the suit was brought. *Held*; to be error.

2. The date is of no consequence; it is the fact of an adjudication on the same subject-matter between the same parties which, gives effect to the former recovery.

3. The operation of the rule is the same whether the record be pleaded by the one or the other of the parties.

4. Where nominal damages only have been given in the first action, it establishes the right, and in a second real damages may be given if shown.

5. In a first action the plaintiff counted generally for flooding his land by a dam; in a second he declared in the same way, and in a second count for injury by a tail-race made on his land. *Held*, if the tail-race was an injury made by the dam, the conclusiveness of the former verdict would be the same to it as to any other part of the land.

6. The owner of a dam, although erected on his own land, is answerable to his neighbor for injury to his land by freshets occasioned or enhanced by the dam not only in ordinary stages of water but by ordinarily recurring freshets.

7. One man cannot, with impunity, invade the premises of another by a nuisance because the damage may be inappreciable. The law allows the recovery of nominal damages at least, as evidence of the plaintiff's right.

May 22d 1868. Before Woodward, C. J., Thompson and Agnew, JJ. Strong and Read, JJ., absent.

Error to the Court of Common Pleas of *Somerset county.*

This was an action in case, commenced September 25th 1865, by David Casebeer against Philip Mowry.

The declaration contained two counts; one for the continuance of a nuisance in flooding the plaintiff's land by a dam; the second, for constructing a tail-race through the plaintiff's land, and causing the water to overflow it.

The plaintiff gave in evidence the record of a former action for flooding his land by raising the same dam, in which he recovered a verdict on the 9th of February 1865 for three cents damages; on the same day, there was a motion for a new trial, which was overruled and judgment entered on the verdict February 9th 1866, about four months after the institution of this suit.

The plaintiff having given evidence of the continuance of the nuisance, of the making of the tail-race and of the amount of

[Casebeer *v.* Mowry.]

damages sustained, the defendant proposed to prove that recently the dam has been removed, and that since its removal the water stands on the plaintiff's land as it did before its removal and during the time of its existence; that the dam never threw the water back on plaintiff's land; that the plaintiff had no damages done him in the years 1862, '3, '4 or '5 by this dam.

The plaintiff objected to the admission of the evidence, but the court admitted it, and sealed a bill of exceptions.

The plaintiff and defendant each submitted a number of points. The charge of the court below and the opinion of the Supreme Court make it unnecessary to specify any but the 4th of the plaintiff, which was: "That the owner of a dam erected on his own land is responsible for all injury done to the land of his neighbor arising from the usual and ordinary and expected freshets occurring in the stream."

The court (King, P. J.) charged:—

"The suit now being tried was commenced on the 25th of September 1865, in which the plaintiff has filed a declaration, containing two counts, in the first he complains of a continuance of the nuisance which was the ground of the action just referred to, and to support his case, he first gives in evidence the record of the verdict and judgment and then calls witnesses to prove that the defendant's dam was in the same condition at the time of bringing suit as it was in 1862, when his first suit was commenced. In answer to this part of the case, the defendant submits to the court a question of law to the effect that this action for the continuance of the nuisance cannot be maintained, because it was commenced while the first action was pending and undetermined, unless he establishes his right by the same kind of evidence that was necessary to support it on the former trial; in other words, that he cannot supply the place of such evidence simply by producing the record of the verdict and judgment in the former case, as no such verdict and judgment was in existence when the suit was commenced. We believe this point to be well taken. As it arises out of the plaintiff's evidence, it was not necessary to plead it. We therefore instruct you that the plaintiff cannot recover damages on the first count of his declaration. Having thus decided this question, it becomes unnecessary to notice the plaintiff's points. The second count of the declaration contains a separate and distinct complaint, and alleges that defendant constructed a tail-race through plaintiff's land, causing the water to overflow the same and doing injury thereto.

"It seems there is a spring near or under the defendant's mill, which had worn a channel through the defendant's land, until it reached the land of plaintiff, and it continued from seven to twelve feet through the land of plaintiff till it reaches the creek. The channel was converted into a tail-race for defendant's

[Casebeer v. Mowry.]

mill about the year 1848 or 1849. * * * Abram Beam says that
the water of the race did not injure the land more than the water
of the spring did; that the gutter had nearly dried up before it
was cleaned out as a tail-race, and that it was about five feet wide.
He fixes the distance of the race through plaintiff's land at ten or
twelve feet. Jonathan Rhoads, a witness on part of defendant,
says that the distance through plaintiff's land is only seven or
eight feet. He further says he was there when they were digging
at the race, and that there was no change in the channel through
Casebeer's land. This is the substance of all the evidence on
this part of the case, as far as we remember it. If we have mis-
stated or omitted anything, you will correct us.

"The first position taken by defendant's counsel on this branch
of the case is, that the action cannot be maintained because the
plaintiff ought to have included this complaint in his first action;
that he cannot divide his causes of action to the annoyance and
vexation of the defendant. The injury at the head of the dam,
and that caused by the tail-race, are two separate and distinct
torts, and may be made the ground of separate actions. We dis-
agree with the counsel, and rule the point against him; there
would be more plausibility in the objection that they could not
be joined in the same action.

"Again, the defendant insists there can be no recovery against
him, because, in converting the channel of the spring into a tail-
race, he did not disturb that part of it which is on the land of the
plaintiff; and he asks us to say to you that if you believe that
part of the channel was in the same condition it was before it was
used as a tail-race, except such change as may have been occa-
sioned by the natural flow of the water, the plaintiff cannot re-
cover. We regard this as a correct view of the law; and if you
find the facts as they are assumed to be by the defendant, and
that the channel was not increased by the additional flow of water,
your verdict ought to be for the defendant.

["Every man in this country ought to be protected in the use
and enjoyment of his property, real and personal, and when this
right is invaded to any appreciable extent, he may seek redress
in the courts,] and when he makes the appeal, it is the duty of
courts and juries to see that his rights are vindicated. If, there-
fore, you find from the evidence that the land of the plaintiff has
been injured by the defendant, it is your duty to render a ver-
dict in his favor. He claims but nominal damages, and should
recover only what he demands, and that will vindicate his right
as clearly and effectually as a verdict for any sum of money, no
matter how large, can do."

There was a verdict for the defendant. The plaintiff having
removed the case to the Supreme Court, assigned for error those
parts of the charge which denied his positions and affirmed the

[Casebeer *v.* Mowry.]

defendants; also, that part included in brackets and the admission of the evidence excepted to.

*A. J. Colborn*, for plaintiffs in error, cited Rockwell *v.* Langley, 7 Harris 508; Duffy *v.* Lytle, 5 Watts 132; Kilheffer *v.* Herr, 17 S. & R. 322; Smith *v.* Elliott, 9 Barr 346.

*S. Gaither*, for defendant in error, cited Rockwell *v.* Langley, 7 Harris 508; Miles *v.* Stevens, 3 Barr 21; Chambers *v.* Bedell, 2 W. & S. 226; Brady *v.* Calhoun, 1 Penna. R. 140; Johnson *v.* Brackbill, Id. 364; Gates *v.* Johnson, 3 Barr 52; Hulings *v.* Guthrie, 4 Id. 123; Schmoyer *v.* Schmoyer, 5 Harris 520; Morgan *v.* Weir, 1 Casey 119; City of Allegheny *v.* Nelson, Id. 332; Thomas *v.* Mann, 4 Id. 520; Brewster's Ad. *v.* Sterrett, 8 Id. 115; Ormsby *v.* Ihmsen, 10 Id. 462.

The opinion of the court was delivered, July 3d 1867, by

THOMPSON, J.—This was an action for the continuance of a nuisance by flooding the plaintiff's land. The suit was brought in 1865, and there was a verdict and judgment for the defendant on the 7th of February, 1867. A previous suit for the same nuisance, occasioned by the same dam, and between the same parties, had been brought in 1862. It was tried in February, 1865, and there was a verdict for three cents damages in favor of the plaintiff, on which judgment was entered on the 9th February, 1866; that was a year before the trial of the case before us.

On the trial of this case below, the plaintiff gave the verdict and judgment in the previous case in evidence; but the learned judge charged that it was not conclusive on the defendant, because it did not exist when the suit was brought. This was an error. In Duffy & Mehaffy *v.* Lytle, 5 Watts 120, this is conclusively settled. The syllabus, which very accurately represents the ruling of the court, states the principle thus: "A prior judgment upon the same cause of action sustains the plea of a former recovery, although the judgment is in an action commenced subsequently to the one in which it is pleaded." The date is of no consequence; it is the fact of an adjudication upon the same subject-matter, and between the same parties, which gives effect to the former recovery. Now the operation of the rule is the same, whether the record be pleaded by one or other of the parties. Of course the adjudication only establishes the right of the plaintiff and the wrong of the defendant, but not the amount of damages. Although in the first action nominal damages only may have been given, that establishes the right, and in a second real damages may be recovered if shown. On the question of the amount of damages, all above nominal may be contested. Hence, in this case the admission of testimony as to this point was not error.

[Casebeer v. Mowry.]

But there was error in the ruling as to the effect of the former recovery. Of course this is only so if the dam was of the same height when the second suit was brought. That it was so we may infer from the fact that nothing was alleged to the contrary.

If the tail-race of defendant's mill made on the plaintiff's land was an injury, occasioned by the defendant's dam, the conclusiveness of the former verdict and judgment would be the same as to it as to any other portion of the land. But it is an incomprehensible idea to me, how land below the dam should be injured by its back flow! If injured, the trespass should be remedied in some way appropriate to its character. We have not the declaration as we ought to have had in these cases. Nor have we any plot or diagram to enable us to understand this matter, perhaps, as we might do if we had them, and therefore we will say nothing further in regard to this part of the case. The case of Rockwell v. Langley, 7 Harris 502, is important as showing how far special issues after a first finding are allowable.

We think the learned judge was bound to affirm the plaintiff's 4th point. The owner of a dam, although erected on his own land, is answerable to his neighbor for injury to his land in times of ordinary freshets, occasioned or enhanced by the dam. This doctrine is clearly announced in Bell v. McClintock, 9 Watts 119, and rules the point. In erecting his dam the owner is bound to regard his neighbor's rights and security, not only in ordinary stages of water, but in those stages occasioned by ordinarily recurring freshets. If, by his dam, he aggravates the injury of an ordinary freshet, he will be responsible. He ought to provide against this in erecting his dam; if he cannot, then it is a case in which he must procure a license from his neighbor to suit the exigency, or not erect it at all. This assignment of error is sustained.

The court committed another error, we think, in applying in effect the doctrine *de minimis* to a case of this kind. The amount of damages is not the sole object of an action of this nature. The right is the great question. It will not do to hold that one man may with impunity invade the premises of another by anything in the shape of a nuisance, because the damage may not be appreciable. The law does not justify or excuse any such invasion, be it ever so small, and allows the recovery of nominal damages at least, as evidence of the plaintiff's right: 2 Rawle 83, 7 W. & S. 9, to which many other authorities might be added.

It was said by the learned judge in his charge that the plaintiff in the second action claimed but nominal damages. This he did in the first; and as the first verdict and judgment on the score of conclusiveness of his right to maintain the action was as effectual as a dozen, it looks as if the object in pressing it to trial was to afflict the defendant with costs and expenses—certainly not a

neighborly incentive by any means—and this may have involuntarily operated somewhat on the second trial, yet he was entitled to the exact measure of the law in his case notwithstanding, whether the surmise be just or unjust. Under the circumstances we reluctantly reverse the judgment, as we learn that the defendant reduced his dam after the first finding, showing a proper and prompt obedience to the law. Whether sufficiently reduced or not we do not know, and intimate nothing more, than in our opinion, this would have been a more proper subject of inquiry, if not satisfactory to the plaintiff, than a repetition merely of the first controversy.

Judgment reversed, and *venire de novo* awarded.