## Richard S. Humphrey, Plff. in Err., *v.* John Irvin et al.

In an action for damages for a continuing nuisance (here, the interference with the natural flow of water by the maintenance of a dam), plaintiff

NOTE.—Any swelling of the stream over the line is an invasion of the rights of the upper owner, who has a right to the stream in its natural condition, which he may protect, not only for present needs, but for possi-

may, under the act of May 2, 1876 (P. L. 95), permitting the recovery of damages up to the day of trial, give in evidence the condition of the obstruction up to the day of trial, including all additions, changes, and repairs made after suit brought.

If the dam or obstructions maintained by defendants caused back water on plaintiff's land in any degree in the ordinary stages of water or freshets which are to be anticipated, then such dam or obstructions would be illegal, and plaintiff would also be entitled to recover such damages as arose from such dam or obstructions in extraordinary freshets.

(Decided October 4, 1886.)

Error to the Common Pleas of Clearfield County to review a judgment on a verdict for defendants in an action of trespass on the case to recover damages for injuries caused by a milldam. Reversed.

On July 30, 1881, this suit was brought by R. S. Humphrey against defendants, to recover damages for the backing of water on plaintiff's land. The declaration in the usual form claims both general and special damages. The plea was "Not guilty."

July 28, 1884, defendants were duly notified by plaintiff that he proposed to claim damages up to the trial of the suit. September 23, 1884, the trial came on, and September 27, 1884, a verdict was rendered for the defendants. January 24, 1885, judgment was entered on the verdict.

Plaintiff then took this writ, assigning for error various rulings of the court in the course of the trial, as well as the instructions to the jury contained in the charge and in answer to the plaintiff's points, as follows:

1. The court erred in overruling plaintiff's offer "to show, by the witness on the stand and by other witnesses, that (between the time the suit was brought and the present time) the piers and the dam and the other obstructions in the stream were increased in size and height and strength, by the defendants, whereby the amount of back water was increased, and the damage to the plaintiff was increased, for which he claims to recover in this suit."

ble future ones. It constitutes a direct trespass upon his property, which he may seek the aid of the courts to redress, and he is not bound to show that he is specially injured. Farnham on Waters, p. 1767.

2. The court erred in saying to the jury as follows:

"The character of this action is such that, to entitle the plaintiff to recover in a case of this kind, he must satisfy you, first, that he has sustained injury; then he must next satisfy you that the injury was caused by the unlawful acts of the defendants, and that the injury is the direct result of these unlawful acts."

3. The court erred in charging the jury as follows:

"You will remember that, when the plaintiff Humphrey was on the witness stand, he said he did not claim damage for any back water; that the water did not do injury, but that it was the ice floods that did the damage of which he complained in this case."

4. The court erred in charging the jury as follows:

"If the injury to plaintiff was caused by the ice gorging in the natural obstructions in the river, then the plaintiff is not entitled to recover from the defendants in this case, because the defendants are not responsible for the shape of the river, its sharp bends, its narrowness, or its being straight or crooked."

5. The court erred in saying to the jury as follows:

"If this injury complained of by the plaintiff really comes from any other cause than the wrongful acts of the defendants, then the plaintiff is not entitled to recover in this action, because these defendants can only be held responsible for their own acts, and for none other."

6. The court erred in charging the jury as follows:

"If you should be of opinion in this case that the ice gorges and this damage were caused by the natural obstructions, the curvature of the banks and the narrowness of the stream at those points, but that, incidentally or remotely, the water coming over this dam would have had something to do with it (that is, with making the jam), then the plaintiff would not be entitled to recover."

7. The court erred in further saying to the jury, in connection with what is just quoted:

"If the plaintiff has suffered damage by reason of the wrongful acts of the defendants, then he is entitled to recover in this case; but, if he suffered his damage from any other cause, then he is not entitled to recover."

8. The court erred in saying to the jury as follows:

"Now you will remember that he (plaintiff) called no wit-

ness to the stand, as I remember, who had worked upon the dam or taken any measurement. They testified that from their observation the dam had been raised over a certain height; that from the appearance of the dam they considered it higher. This, together with the backing of the water farther up the stream, he claims to be sufficient to show that the dam has been raised."

9. The court erred in saying to the jury as follows:

"One of the witnesses, I think it was the engineer for the plaintiff (Mr. Butts), testified that when 3 feet of water was flowing over the breast of the dam, it would be drowned out, it would have no effect on the stream; when the floods were high enough to flow over the breast of the dam, then it would be drowned out."

10. The court erred in refusing to affirm plaintiff's third point. Said point was as follows:

"If said dam or obstructions which were maintained by the defendants caused back water on plaintiff's land, in any degree, in the ordinary stages of water or freshets which are to be anticipated, then such dam or obstructions would be illegal, and plaintiff would also be entitled to recover from defendants such damages as arose from said dam or obstructions in the extraordinary freshets that sometimes occur."

The court answered as follows: "That point is refused. I do not think that is the law."

11. The charge as a whole was erroneous and calculated to mislead the jury, to the prejudice of the plaintiff.

12. The court erred in refusing to allow plaintiff to examine John Irvin on the subject of the repairs made to the dam after the suit was brought and before the time of trial.

13. The court erred in saying to the jury as follows:

"You will also notice that the injury complained of is the overflowing of the land by the ice, and that the ice comes down stream. It is something coming down from above the plaintiff's land, not from below where the defendant's dam is. Of course the ice is not manufactured by the defendants; neither is the water flood produced there by the defendants."

*McEnally & McCurdy,* for plaintiff in error.—The object of the act May 2, 1876 (Purdon's Digest, p. 2002), was to avoid a

multiplicity of suits by giving the plaintiff a right to recover damages up to the day of trial.

Under that act, the cause of action in this case, at the time of trial, was the backing of water by defendants on the land of plaintiff from July 30, 1875, to the day of trial, by means of a dam and other obstructions as they were maintained in the stream by the defendants during that period of time.

The plaintiff, therefore, was entitled to give in evidence the condition of said dam and obstructions during that whole period of time, including all such additions, changes, and repairs as were made by the defendants. In any view of the case, these things were material and important in ascertaining the amount of damages which plaintiff might be entitled to recover. Bisbing v. Third Nat. Bank, 93 Pa. 79, 39 Am. Rep. 726.

Plaintiff relies upon the following authorities to support this action for damages: 1 Sutherland, Dam. pp. 9, 10, 47, 61; 1 Rawle, 27, 28, 29; 2 Rawle, 83; 4 Rawle, 10; 9 Watts, 119 120, 121; 7 W. & S. 9; 55 Pa. 419; Act May 2, 1876 (Purdon's Digest, p. 2002); Brightly's Digest, 837, pl. 379, 381.

This court will reverse the judgment for error in the charge of the court below. 3 Brightly's Digest, 3215, pl. 63, 64; 68 Pa. 272; 95 Pa. 376.

*Orvis & Snyder,* for defendants in error.—The plaintiff had a right to recover damages, if he was entitled to recover at all, from July 30, 1875 (being six years before the bringing of this suit), up to the time of trial for the cause of action existing at the time of the bringing of this suit. But he could not, under the act of 1876, introduce a new cause of action.

OPINION BY MR. JUSTICE STERRETT:

This action on the case was brought against the widow and heirs of John Irvin, deceased, defendants in error, to recover damages for injuries alleged to have been done to plaintiff's land by their milldam.

In the declaration it is averred that on July 30, 1875, and between that time and the bringing of this suit, the defendants wrongfully, injuriously, and unlawfully made, kept, and continued, and caused to be made, kept, and continued, a dam of great length, width, etc., across the river at a point about 3 miles below plaintiff's land, more or less, by the course of said

river, and by reason of said dam, so made, kept and continued by defendants, the water of said stream during the time aforesaid was raised at divers times to a great height, *viz.:* the height of 10 feet upon plaintiff's said land, above what the waters of said stream would have been if left to flow freely in its natural channel, free from such artificial obstructions; whereby a large quantity of plaintiff's land was overflowed, washed, and greatly damaged, and the fences and other improvements partly washed away, and in other respects greatly injured and destroyed, the rafting ground of plaintiff on said land greatly damaged, interfered with, and depreciated in value, and said plaintiff's business of farming, lumbering, etc., so interfered with and injured that plaintiff was deprived of great profits, and subjected to large outlays, expenses, etc.

The injuries thus complained of being in the nature of a continuing nuisance, plaintiff gave the requisite notice, and, under the act of May 2, 1876 (P. L. 95), claimed the right to prove and recover damages for maintenance of the alleged unlawful structure. He accordingly made the offer, the rejection of which forms the subject of complaint in the first specification.

When we consider the old law, the mischief, and the remedy, it is very evident that the object of the act last referred to was to avoid multiplicity of suits, by giving the plaintiff in this class of cases the right to recover damages up to the day of trial.

Formerly, damages of the kind complained of, suffered between the impetration of the writ and time of trial, could only be recovered in a second suit. This was considered a defect in the law which the act was intended to remedy. It is a mistake to suppose the offer was to prove a new cause of action not existing when suit was brought. The cause of action then was, and still is, an unlawful interference with the natural flow of the water through plaintiff's land, by means of a dam, theretofore maintained by the defendants.

The offer was to prove that after suit brought they persisted in continuing, increasing, and strengthening the obstruction which constituted the alleged nuisance. We think, therefore, the plaintiff was entitled to give in evidence the condition of the dam and obstructions during the whole period of time, including all such additions, changes, and repairs as were made by defendants.

It has also been suggested that, if there was technical error in

excluding the offer, plaintiff was not thereby prejudiced, because the result of the trial shows he had no cause of action at the time suit was brought, and he cannot be permitted to recover for a subsequently accruing cause of action. This position is more plausible than sound. It is predicated on the assumption that there was no error, in the course of the trial, which may have prevented recovery for a good cause of action existing when suit was brought. At least one such error, we think, was committed by the refusal of the court to affirm plaintiff's third point. In that point the learned judge was requested to charge:

"If said dam or obstructions maintained by defendants caused back water on plaintiff's land in any degree in the ordinary stages of water or freshets which are to be anticipated, then such dam or obstructions would be illegal, and plaintiff would also be entitled to recover from defendants such damages as arose from such dam or obstructions in the extraordinary freshets that sometimes occur."

As applicable to the facts of the case, this is a correct statement of the law, and the proposition should have been affirmed.

In Pastorius v. Fisher, 1 Rawle, 27, it is said: "In an action for overflowing plaintiff's land by the erection of a dam on the land of the defendant, in which the nature and extent of the alleged injury are specially described in the declaration, the plaintiff is entitled to a verdict for nominal damages, though he fail to prove the particular injury complained of, or any other actual injury."

In delivering the opinion of the court in that case, GIBSON, Ch. J., says: "The law implies damages for flooding the ground of another, though it be in the least possible degree and without actual prejudice. . . . But where the law implies the injury it also implies the lowest damages, except in cases of personal injury, where damages are given, not to compensate, but to punish. Here, however, it is said the plaintiff undertook to prove special damage, and therefore staked his case on the event. But surely an attempt to prove an injury beyond what the law implies is not necessarily a relinquishment of damages for everything short of the whole case. Where the plaintiff goes for special damage, he must lay it, else he should not give evidence of it. But the converse of the rule does not hold,—that having laid it, he must prove it or fail altogether. It would be neither reasonable nor just to compel him to elect between real and nom-

inal damages, or to refuse compensation as far as a substantial cause of action has been proved. The action may be brought to try the right, and the verdict, being conclusive, would stand in the way of a recovery for a substantial injury, if any were suffered afterwards."

In Casebeer v. Mowry, 55 Pa. 419, 93 Am. Dec. 766, the same principle is thus stated: "One man cannot with impunity invade the premises of another by a nuisance, because the damage may be inappreciable. The law allows the recovery of nominal damages, at least, as evidence of the plaintiff's right."

In support of plaintiff's proposition other cases may be cited, among which are: Alexander v. Kerr, 2 Rawle, 83, 19 Am. Dec. 616; Lehigh Bridge Co. v. Lehigh Coal & Nav. Co. 4 Rawle, 10, 26 Am. Dec. 111; Bell v. M'Clintock, 9 Watts, 119, 34 Am. Dec. 507.

The last two cases are authority for the position that, where the loss happens exclusively from an act of Providence, the defendant is not liable; but where his negligence or fault concurs with the act of Providence, he is answerable for damages.

It follows from what has been said that the first and tenth specifications of error are sustained; and, so far as the remaining specifications are involved in either of these errors, they are also sustained.

The remarks of the learned judge complained of in the third, ninth, and thirteenth specifications were calculated to create an erroneous impression in the minds of the jury; but standing alone they would not warrant reversal of the judgment.

Judgment reversed and a *venire facias de novo* awarded.