## Dunn, Appellant, v. Phila. R. T. Company.

Argued September 27, 1933.

Before KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*George J. Edwards, Jr.,* and with him *Ralph S. Croskey,* for appellant.

*S. S. Herman,* and with him *B. J. O'Connell,* for appellee.

OPINION BY STADTFELD, J., December 16, 1933:

This is an appeal by plaintiff from a judgment for defendant, notwithstanding a verdict for plaintiff, in an action of trespass to recover damages for personal injuries, and damages to plaintiff's automobile, alleged to have been sustained by reason of the defendant's negligence.

The case was tried before the court and a jury, and resulted in a verdict for plaintiff in the sum of $850.

The plaintiff at the time of the accident, May 11, 1929, was driving his Ford sedan automobile southwest (towards the city) on the center driveway of Roosevelt Boulevard in the City of Philadelphia, and desired to make a left-hand turn into C Street.

Roosevelt Boulevard measures from house line to house line 300 feet, and consists of three driveways separated by two grass plots. The pavements are each 30 feet wide; the north and south driveways are each 34 feet wide; the grass plots are each 56 feet wide; and the center driveway is 60 feet wide. The south drive is for east bound traffic only. C Street measures from house line to house line 80 feet, with 15 feet wide pavements and a 50 feet wide cartway.

Upon reaching C Street, the plaintiff drove over to the extreme right hand side of the center driveway, as was then the rule, and stopped. Traffic was open on Roosevelt Boulevard. There was a police officer at this point (the center driveway east side of C Street) directing traffic. The officer blew his whistle, put out his arms to stop traffic on Roosevelt Boulevard and motioned to plaintiff to come on and make his left hand turn. Until the happening of the accident there was no change in the traffic signal. The officer kept his hands extended until he heard the crash. The

officer held the traffic for the plaintiff to make a left hand turn. Plaintiff made his left hand turn and started southeast on C Street. When at or about opposite the center of the grass plot he noticed the defendant's bus 200 feet from C Street, coming northeast (away from city) on the south drive of Roosevelt Boulevard. At this time plaintiff had 40 feet to go to the point of contact. Two other cars had already stopped abreast on the north side of the south drive of Roosevelt Boulevard, east of C Street, their combined frontage taking up 15 feet on this driveway.

The plaintiff continued watching traffic as he went and was about to shift into second gear when he was abreast of the two standing cars, and at that time saw the bus was not going to stop. Plaintiff immediately put on his brakes and "tried to turn with" the bus but it hit him. The bus turned him and took him with it, driving him up on the sidewalk and into a tree. The bus itself went over the sidewalk and on to a lawn; the Ford to the left, the bus to the right.

The bus had passed the two standing cars on their right hand side. It was running along the south curb about two or three feet from the parked cars.

When plaintiff was opposite the two parked cars his front was "on even terms" with the south side of the second parked car. The bus "looked to be about three, four or five feet back of the two cars," whose length was 10 or 12 feet. When the bus was from 15 or 17 feet from point of contact, and plaintiff three feet from point of contact, plaintiff realized the bus was not going to stop.

Just before the accident the plaintiff was going nine or ten miles an hour and could stop within four or five feet. The bus was going forty miles an hour.

The defendant offered no evidence, but presented a point for binding instructions which was declined. Defendant then filed a motion for judgment n. o. v. which

was granted, a majority opinion being filed by FIN-LETTER, P. J., and a dissenting opinion by BROWN, JR., J. Judgment was entered for defendant and from that judgment this appeal was taken.

The verdict in favor of plaintiff established the facts that the defendant was guilty of negligence and that the plaintiff was not guilty of contributory negligence. The only question in this case is whether plaintiff's testimony showed a case of contributory negligence as a matter of law. In Todd et al. v. Nesta, 305 Pa. 280, 287, Mr. Justice DREW said: "Mr. Justice KEP-HART, speaking for the court, said in Jester v. Phila., Baltimore & Washington R. R. Co., 267 Pa. 10, 12: 'We have frequently said a nonsuit can be entered only in clear cases, when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to plaintiff, could determine in his favor the controlling issue involved: Virgilio v. Walker & Brehm, 254 Pa. 241.' The same principle of law applies to motions for binding instructions and judgment non obstante veredicto. If there be doubt as to the inferences to be drawn from the facts where the degree of care varies with the circumstances, the question of negligence is for the jury: Frank v. Cohen, 288 Pa. 221." To same effect see Adams v. Gardiner, 306 Pa. 576, 585, 586, opinion by Mr. Justice MAXEY.

Appellee urges in support of its contention that plaintiff was guilty of contributory negligence as a matter of law that after the latter was in the center of the grass plot and saw the bus approaching at a distance of 200 feet, going at a rate of forty miles an hour, he did not again see or have a view of the bus until he was just abreast of the two automobiles which had preceded the bus and had stopped at the inter-

section. According to plaintiff's testimony he immediately put his foot on the brakes and pushed the clutch in and tried to turn with the bus in order to avoid the collision which he said was imminent. At this time the bus was about three or four feet in back of the two cars that were parked on the curb side at the intersection. These cars were about nine or ten feet long, so that defendant's bus was about thirteen or fourteen feet from plaintiff's car. Plaintiff's testimony also was that he was watching other traffic and the people, so he kept right on going. Appellee claims that after plaintiff had made the left hand turn, into C Street, in obedience to the signal of the traffic officer, it was not possible for him, with the traffic officer to his rear, to see whether the signal had been changed. This loses sight of the fact that the signal consisted both of the blowing of a whistle and the holding out of the officer's hands. According to plaintiff's testimony there was no whistle blown. In the absence of the blowing of the whistle, plaintiff had a right to assume that no change had been made by the officer to stop plaintiff from proceeding. Plaintiff had a right to assume, with the signal in his favor and no change having been made, that the defendant's bus, 200 feet away, even going at the rate of 40 miles an hour, would exercise due care and come to a stop at the intersection. He was not bound to assume that the defendant's driver would disregard the traffic signal.

The majority opinion of the lower court states: "It is argued that the plaintiff had a right to presume that the defendant would not drive negligently and that he would obey the traffic signal. There are expressions to that effect in many cases, made under the particular facts of those cases. But experience shows that the presumption is ill founded. Drivers of automobiles are only too often negligent, as the crowded trial lists show. And to presume that they will not

be is to presume what is not true. The effect of such a rule would only add to the dangers of the road. Driving nowadays can not be regulated by logic, but by prudence." With this statement we cannot agree, and we do not think that it is in consonance with the opinions of the appellate courts of this state. To adopt the view of the lower court would be to encourage the violation of traffic rules and signals, and then permit the person so violating to invoke his own negligence in support of a charge of alleged contributory negligence on the part of the injured party.

We think the dissenting opinion in the lower court correctly states the situation: "He had the right of way. He was proceeding in accordance with the instructions of the traffic officer, who had stopped traffic on the boulevard so as to permit plaintiff and those following him to cross the south drive. He looked not only before he reached the south drive but again at the first point when his vision was not obscured by the standing automobiles. He was proceeding at no more than 10 miles an hour. True, his first look revealed the bus approaching at 40 miles an hour, but the distance of 200 feet was ample for it to stop. His second look indicated the danger which he tried to avoid. He was not proceeding blindly. Not only was he observant but he was relying upon the traffic signal."

The majority opinion of the lower court relies upon the case of Byrne et al. v. Schultz, 306 Pa. 427, quoting from the opinion by Mr. Justice Drew, p. 432: "It has been firmly established that a driver having the right of way at an intersection is still bound to use proper care under the circumstances to avoid collision with an approaching vehicle." In the same case, however, the learned Justice says, p. 434: "If he (plaintiff) had looked, had seen the bus and reasonably could have expected it to stop on the signal, a very different

question would have arisen. In that event he would not be held as a matter of law to be negligent." This language is peculiarly applicable to the instant case. The majority opinion also relies upon a portion of the opinion in Galliano v. East Penn Electric Co., 303 Pa. 498, 502, quoted in the Byrne case, supra, for the propositions "that a 'go' signal at a street intersection confers no authority on either a motorman or a chauffeur who receives this signal to proceed across that intersection regardless of other persons or vehicles that may already be within it;" that "it is not a command to go but a qualified permission,—i. e., a permission to proceed lawfully and carefully in the direction indicated;" that "it does not mean that the person receiving the signal may proceed without a care or thought as to the safety of others who may be in his path;" and that "the duty to obey a traffic officer's signal or direction to go ahead is subject to the paramount duty of exercising due care and caution as to others who may be in the intersection and the driver should not comply with such a direction where he sees, or with reasonable diligence should see, that such compliance will probably result in an accident." This case we think is properly distinguished in the minority opinion, quoting from the opinion by Mr. Justice Maxey in that case, p. 504, "If the autoist entered the intersection first, he was justified in assuming that his right of way is superior to the street car's, even if the green light had beckoned the street car after the automobile entered the intersection."

In Wagner v. Philadelphia Rapid T. Co., 252 Pa. 354, 359, 360, Mr. Justice Mestrezat said: "The failure to anticipate negligence which results in injury is not negligence and will not defeat an action for the injury sustained. A party is not bound to guard against the want of ordinary care on the part of another; he has a right to presume that ordinary care

will be used to protect him and his property from injury. No one can complain of want of care in another where care is only rendered necessary by his own wrongful act: Philadelphia & Reading R. R. Co. v. Hummell, 44 Pa. 375, 379." To same effect, Davis et ux. v. American Ice Co., 285 Pa. 177.

If the bus approached the intersection with due regard to the rights of other users of the highway, there was sufficient time for plaintiff's car to cross the intersection before the bus reached it. On the other hand, if the bus, when first seen, was running at a high speed, there was ample opportunity to stop before reaching the intersection on which plaintiff was driving, consequently, plaintiff was justified in assuming the bus driver would observe such care and caution as the circumstances required. The mere fact that plaintiff did not again observe the bus until about the instant of collision, does not require us to hold him negligent as a matter of law: Davis v. American Ice Co., supra. As stated in Simon v. Lit Bros., 264 Pa. 121, 123: "It is the duty of the driver of an automobile in approaching a street crossing to have his car under control and observe if vehicles are approaching on the intersecting street, and, in case a car or truck is first at the crossing, that vehicle must be given an opportunity to cross the intersecting street, and due care used to avoid collision: McClung v. Penna. Taximeter Cab Co., 252 Pa. 478. The driver of the motor car first reaching the crossing has the right to assume the driver of an automobile approaching on the intersecting street, will do so at a moderate speed with his car under control."

The language of Mr. Justice MAXEY in Adams v. Gardiner, supra, applies with full force to the instant case: "If plaintiff in this case failed to exercise due care at the intersection his testimony and that of his witnesses did not show that fact so plainly that the

court below could as a matter of law declare him guilty of contributory negligence. The jury might under the evidence have done so but it did not. The court below submitted the issues of fact to the jury in a careful, accurate charge. The jury took the view of the testimony most favorable to the plaintiff. On a motion for judgment n. o. v. the court below also had to take that view. Under this view, the plaintiff was not guilty of contributory negligence."

In our opinion the question of defendant's negligence and the plaintiff's contributory negligence were for the jury and were fairly submitted in a charge to which defendant took no exception, except as to the refusal of binding instructions, and the verdict in favor of plaintiff should not have been disturbed. The assignments of error must, therefore, be sustained.

The judgment is reversed and is now entered for plaintiff on the verdict.